# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **RACHELLE OWENS, ET AL.** | **CIVIL ACTION NO. 06-0057** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **TOWN OF DELHI, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Rachelle Owens ("Owens"), individually and on behalf of her minor child, Latia Owens, brought suit under 42 U.S.C. § 1983 against the Town of Delhi, the Delhi Police Department ("DPD"), DPD Chief of Police Gregg McKinney ("Chief McKinney), and DPD Officer Jessie Nielsen ("Officer Nielsen"). She claims that Officer Nielsen violated her and her daughter's Fourth and Fourteenth Amendment rights when he entered and searched her home without a warrant. Owens also alleges that the Town of Delhi has an unconstitutional policy of entering and searching residents' homes without a warrant, and that the Town of Delhi and Chief McKinney failed to adequately train Officer Nielsen on the constitutional standards for conducting a warrantless search. Finally, Owens asserts that all Defendants are liable under state law for negligence and intentional misconduct.

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. No. 11]. Defendants claim that Owens consented to search, and alternatively, that Officer Nielsen is entitled to qualified immunity because his conduct was objectively reasonable under the circumstances. Defendants also claim that the Town of Delhi does not have a policy of

authorizing unconstitutional searches, and that the Town of Delhi and Chief McKinney properly trained Officer Nielsen. Defendants also move for summary judgment on Owens' state law claims arguing that Officer Nielsen and Chief McKinney are entitled to immunity under Louisiana's discretionary immunity doctrine and that Owens failed to establish a state law claim against the Town of Delhi.

Owens did not oppose Defendants' Motion for Summary Judgment.

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART.

**I.    FACTS AND PROCEDURAL HISTORY**

On January 18, 2005, DPD Officer Jonathan George Young received a 911 call from a residence located at 307 Fourth Street, Delhi, Louisiana, but the caller hung up. Officer Nielsen was dispatched to investigate.

At around 11:00 p.m., Owens was asleep with her nine-year-old daughter when Officer Nielsen came to her home, identified himself as a DPD Officer, and advised her that the DPD received a 911 call from her residence. Owens stated that she did not place a 911 call and there was no emergency.

Officer Nielsen testified that Owens was acting nervous and erratic, so he requested permission to enter in order to "make sure everything was fine." [Doc. No. 11, ¶ 11]. Owens gave him permission to enter the residence and told him that her daughter was in the house. Officer Nielsen asked to check on her daughter and Owens told him which bedroom was her daughter's. [Doc. No. 11, ¶ 13]. Officer Nielsen testified that he shined his flashlight on her daughter's bed, avoiding her face, and verified her safety.

Officer Nielsen then completed a sweep of the house. He was never asked to stop or leave the residence. He was in Owens' home for approximately one and one-half minutes.

On January 17, 2006, Owens filed suit under 42 U.S.C. § 1983 against the Town of Delhi, Chief McKinney, and Officer Nielsen. She also asserted state law claims of negligence and intentional misconduct against all Defendants.

On October 20, 2006, Defendants filed a Motion for Summary Judgment [Doc. No. 11]. Owens did not file a memorandum in opposition.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard of Review

A motion for summary judgment cannot be granted simply because there is no opposition. An unopposed motion seeking summary judgment shall be entered "if appropriate." Fed. R. Civ. P. 56(e). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* Unless the moving party meets this burden, the court may

3

not grant the unopposed motion, regardless of whether any response was filed. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

### B. Section 1983 Claims

#### 1. Individual Capacity Claim Against Officer Nielsen

In her Complaint, Owens alleges that Officer Nielsen violated the Fourth and Fourteenth Amendments because he entered and searched her home without a warrant and searched her home in an unreasonable manner.

Officer Nielsen claims that Owens consented to his entry and search of her home. [Doc. No. 11, ¶ ¶ 13-16]. Alternatively, he claims that his search was justified by exigent circumstances and was conducted in a reasonable manner. Officer Nielsen argues that he requested permission to enter and search Owens' home because he was concerned that a possible hostage situation or domestic violence dispute was in progress, not to look for evidence of a crime. *Id.* He asserts that his search was limited to a "sweep for third party intruders," he was careful to avoid waking her daughter, and he was in Owens' home for less than one and one-half minutes.

In reviewing a police officer's claim of qualified immunity, the Court must first determine whether the facts alleged, "'[t]aken in the light most favorable to the party asserting injury," are sufficient to "show the officer's conduct violated a constitutional right.'" *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[1]

---

[1] Assuming that the plaintiff has raised a genuine issue of material fact for trial on the constitutional issue, the court must then address the qualified immunity issue: whether it was clearly established that the officer violated an individual's constitutional rights. *Id.* at 199.

A warrantless entry into the home is presumptively unreasonable under the Fourth Amendment unless it is conducted pursuant to valid consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citing *Davis v. United States*, 328 U.S. 582, 593-94 (1946)); *U.S. v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). The government must prove, by a preponderance of the evidence, that consent was knowing and voluntary, given by a person with authority to give consent, and that the officer did not exceed the scope of consent at any point during the search. *See U.S. v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997). Consent may be express or implied by the circumstances surrounding the search or by a person's failure to object to the search. *See U.S. v. Jaras*, 86 F.3d 383, 390-91 (5th Cir. 1996) (where the officer expressly or impliedly asks for consent, consent can reasonably be implied from silence or failure to object).

    a.    **Knowing and Voluntary**

The knowing and voluntariness of consent is a question of fact to be determined from the totality of the circumstances surrounding the search. *See Ohio v. Robinette*, 519 U.S. 33, 40 (1996). To determine whether consent is voluntarily given, the Court must examine a number of factors, including:

> 1) the voluntariness of the [person's] custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the [person's] cooperation with the police; 4) the [person's] awareness of his right to refuse consent; 5) the [person's] education and intelligence; and 6) the [person's] belief that no incriminating evidence will be found.

*United States v. Hernandez*, 279 F.3d 302, 307 (5th Cir. 2002) (citing *United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000)).

Officer Nielsen told Owens that the reason for his visit was to ensure her safety. She was not in custody, and, therefore, she had no reason to fear that incriminating evidence would be

5

found or that she was suspected of a crime. While it is unclear whether Owens was aware that she had the right to refuse consent, Owens has not offered evidence that Officer Nielsen employed any coercive tactics to obtain her consent. The undisputed summary judgment evidence demonstrates that Owens cooperated with Officer Nielsen. Therefore, the Court finds that Owens' consent was knowing and voluntary.

      **b.**    **Authority**

"A person has actual authority to consent to a search when she 'possess[es] common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *United States v. Shelton*, 337 F.3d 529, 532 (5th Cir. 2003). As Owens either rented or owned her home, she had authority to consent to search.

      **c.**    **Scope**

The standard for measuring the scope of consent "is that of 'objective' reasonableness [or] what would the typical reasonable person have understood by the exchange" between Officer Nielsen and Owens. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

While Owens could argue that she only consented to Officer Nielsen's entry into her home, and not the search of her daughter's bedroom or the rest of the house, it was objectively reasonable for Officer Nielsen to infer that Owens implicitly consented to a search of her entire home because she did not protest. Moreover, the temporal duration of the search is further evidence that Officer Nielsen did not exceed the scope of Owens' consent.

Based on the uncontested summary judgment evidence, the Court finds that Owens had authority, gave knowing and voluntary consent, and Officer Nielsen did not exceed the scope of

Owens's consent at any point during the search.[2] *See United States v. Santiago*, 410 F.3d 193, 199-200 (5th Cir. 2005) (finding consent despite the defendant's claim that he did not consent to search, the deputies used physical force to detain him and enter his home, the deputies remained for 45 minutes, and "ransacked" his home).

Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

### 2. Official Capacity Claims

In her Complaint, Owens claims that Officer Nielsen's constitutional violation was a result of the Town of Delhi's policy of authorizing unconstitutional searches and the Town of Delhi's and Chief McKinney's failure to train Officer Nielsen on the constitutional standards for conducting a warrantless search.

Defendants argue that Owens has no evidence to support her allegation that the Town of Delhi authorizes unconstitutional warrantless searches of its residents' homes. Instead, the Town of Delhi's Municipal Employment Handbook states that "[o]fficers shall not make any arrest, search, or seizure, which they know or should know is not in accordance with law and departmental procedures." [Doc. No. 11-4, p. 12]. Officer Nielsen testified that the DPD policy and procedure directs officers to use their discretion, evaluate the surrounding circumstances, and then determine whether the circumstances and safety of the occupants justify a warrantless entry into a resident's home from which a 911 call is received. [Doc. No. 11-2, ¶ 7].

Defendants also argue that Owens makes unsupported allegations that the Town of Delhi's and/or Chief McKinney's failure to adequately train Officer Nielsen caused the allegedly

---

[2]Because the Court finds that there was no constitutional violation, it need not determine whether Officer Nielsen is entitled to qualified immunity.

unconstitutional search of her home. Officer Nielsen testified that he was certified by the Peace Officer Standards and Training Council in 2003 and completed the North Delta Regional Academy Criminal Justice Program in 2003. [Doc. No. 11-2, ¶ 2-3]. Based on his training, Officer Nielsen states that he is ". . . aware of the standards for searches and seizures pursuant to the Louisiana Constitution and the United States Constitution." [Doc. No. 11-2, ¶ 4].

To be liable in his official capacity under Section 1983, Chief McKinney must have been delegated policy-making authority under state law and "affirmatively participate[d] in acts that cause constitutional deprivation. . . or implement[ed] unconstitutional policies that causally result[ed] in plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996). As a municipality, the Town of Delhi can be found liable if it has a custom or policy that led to the alleged constitutional violations committed by Officer Nielsen.[3] *Drain v. Galveston County*, 999 F. Supp. 929, 936 (S.D. Tex. 1998) (citing *Colle v. Brazos Cty., TX*, 981 F.2d 237, 246 (5th Cir. 1993)). The Town of Delhi and Chief McKinney can also be found liable for failing to adequately train Officer Nielsen if the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Owens has not offered any evidence that Chief McKinney or another final policy-maker was directly involved in denying Owens' constitutional rights. Likewise, there is no evidence that there is a municipal policy that allows police officers to make unconstitutional warrantless searches or that Officer Nielsen received inadequate training.

---

[3]Owens also sued Officer Nielsen in his official capacity. An official capacity suit against an officer is another way of suing the municipality. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

Even if Owens was able to show an unconstitutional policy or failure to train, her claim fails as a matter of law because the Court has found that she has not suffered an underlying constitutional violation. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (the Court found that if the officer had inflicted no constitutional injury, then the city and the commission could not be liable); *see also Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392-93 (5th Cir. 1999) (same).

Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

## C. State Law Claims

Owens claims that Defendants' activities constitute "negligence and intentional [mis]conduct" under Louisiana law. [Doc. No. 1, p. 2, ¶ 2]. Owens asserts supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

Defendants argue that Owens' state law claims against Officer Nielsen and Chief McKinney should be dismissed pursuant to Louisiana's discretionary immunity doctrine. *See Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) (quoting La. R.S. § 9:2798.1). Defendants also argue that Owens has failed to establish any claim against the Town of Delhi.

Supplemental jurisdiction exists over all of Owens' claims because her federal and state law claims "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). However, the Court ". . . should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court

involving pendent state-law claims." *Id.* at 350.

Here, the federal claims against all Defendants have been dismissed and only state law claims remain. Defendants offered only conclusory assertions with respect to Chief McKinney's and the Town of Delhi's liability under state law. Additionally, Owens' attorney withdrew from the case prior to the deadline for filing an opposition.[4] Therefore, the factors of judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise jurisdiction over Owens' remaining state law claims. *See Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992).

### III. CONCLUSION

For the reasons set forth in this ruling, Defendants' Motion for Summary Judgment [Doc. No. 11] is GRANTED IN PART. Defendants' Motion for Summary Judgment on Owens' federal law claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over Owens' state law claims, and those claims are DISMISSED WITHOUT PREJUDICE.

MONROE, LOUISIANA, this 4th day of January, 2007.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[4] On November 22, 2006, Owens' attorney, Raymond Lee Cannon, filed a Motion to Withdraw as Plaintiffs' Counsel [Doc. No. 16] and was terminated on November 27, 2006. In her order granting withdrawal, Magistrate Judge Karen L. Hayes stated that the deadline for Owens to file a response remained December 11, 2006 [Doc. No. 17].